1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10  TAMMY L. LANIER,

11            Plaintiff,                No. CIV S-05-2484 PAN (JFM)

12       vs.

13
    JO ANNE B. BARNHART,
14  Commissioner of Social Security,

15            Defendant.              ORDER

16  _____/

17            This case is before the undersigned pursuant to 28 U.S.C. § 636(c)(consent to

18  proceed before a magistrate judge).  Plaintiff seeks judicial review of a final decision of the

19  Commissioner of Social Security ("Commissioner") denying an application for Disability Income

20  Benefits ("DIB") under Title II of the Social Security Act ("Act").  For the reasons discussed

21  below, the court will deny Plaintiff's motion for summary judgment or remand and grant the

22  Commissioner's cross-motion for summary judgment.

23  /////

24  /////

25  /////

26  /////

1

I. Factual and Procedural Background

In a decision dated October 20, 2004, the ALJ determined Plaintiff was not disabled.[1]  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review.  The ALJ found Plaintiff has the severe impairment of degenerative disc disease of the lumbar spine, but that this impairment does not meet or medically equal a listed impairment; Plaintiff's depression was not severe; Plaintiff's allegations regarding the extent of her impairment were not entirely credible; Plaintiff has the residual functional capacity to lift and carry 20 pounds frequently and 50 pounds occasionally, sit for up to six hours in an eight hour day, walk and stand for up to six hours in an eight hour day, and

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

1  occasionally bend, stoop, kneel, and crawl; Plaintiff's severe impairment does not preclude her

2  from performing her past relevant work as a bank teller or restaurant manager; and Plaintiff is not

3  disabled.  Administrative Transcript ("AT") 18-19.

4        Plaintiff contends that the ALJ committed numerous errors.  First, Plaintiff argues

5  that the ALJ improperly rejected the opinion of Plaintiff's treating physician.  Second, Plaintiff

6  contends that the ALJ factually erred by finding that Plaintiff did not suffer from the severe

7  impairment of depression.  Finally, Plaintiff states that the ALJ erred by failing to analyze

8  properly Plaintiff's subjective complaints of pain.

9  II.  Standard of Review

10        The court reviews the Commissioner's decision to determine whether (1) it is

11  based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the

12  record as a whole supports it.  Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing

13  Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)).

14  Substantial evidence means more than a mere scintilla of evidence, but less than a

15  preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v.

16  Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)).  "It means such relevant evidence as a

17  reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402

18  U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S.

19  197, 229, 59 S. Ct. 206 (1938)).  The record as a whole must be considered, Howard v. Heckler,

20  782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that

21  detracts from the ALJ's conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir.

22  1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of

23  supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If

24  substantial evidence supports the administrative findings, or if there is conflicting evidence

25  supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see

26  Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

1  improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d

2  1335, 1338 (9th Cir. 1988).

3  III.  Analysis

4      a.  The ALJ Properly Weighed the Medical Opinions Contained in the Record.

5          The ALJ gave "little weight" to the opinion of Plaintiff's treating physician.  AT

6  17.  In reaching this conclusion, the ALJ noted that there was no objective support in the medical

7  record for the treating physician's conclusion that Plaintiff was disabled.  Id.  The ALJ's finding

8  is not in error.

9          The weight given to medical opinions depends in part on whether they are

10  proffered by treating, examining, or non-examining professionals.  Lester v. Chater, 81 F.3d 821,

11  830 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional,

12  who has a greater opportunity to know and observe the patient as an individual.  Id.; Smolen v.

13  Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

14          To evaluate whether an ALJ properly rejected a medical opinion, in addition to

15  considering its source, the court considers whether (1) contradictory opinions are in the record;

16  and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a

17  treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81

18  F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be

19  rejected for "specific and legitimate" reasons, that are supported by substantial evidence.  Lester,

20  81 F.3d at 830.  While a treating professional's opinion generally is accorded superior weight, if

21  it is contradicted by a supported examining professional's opinion (e.g., supported by different

22  independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d

23  1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  In

24  any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical

25  findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory,

26  minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a

1  non-examining professional, without other evidence, is insufficient to reject the opinion of a

2  treating or examining professional.  Lester, 81 F.3d at 831.

3          Plaintiff was treated by Dr. Kobrin[2] starting on August 10, 2000.  AT 178.  During

4  this initial evaluation, Dr. Kobrin, a neurologist, found no objective basis to confirm Plaintiff's

5  strong complaints of lumbar radiculitis.[3]  AT 179.  Dr. Kobrin suggested that Plaintiff receive an

6  epidural injection, which, after some initial hesitation, she ultimately took on September 28,

7  2000.  AT 177.

8          Following this epidural, Dr. Kobrin saw Plaintiff on no fewer than 16 occasions.

9  AT 145-73.  During this time, Plaintiff continued to complain of lower back pain radiating into

10  her right leg.  Treatment by Dr. Kobrin consisted of additional epidurals, AT 145-48, and

11  prescription pain killers, AT 146, 151, 158, 159, 165, 167.  Dr. Kobrin relied on conservative

12  treatment of Plaintiff because surgery had been ruled out.  AT 158.

13          In addition, Plaintiff underwent numerous objective tests to determine the source

14  for her pain.  An MRI reviewed by Dr. Kobrin was normal.  AT 179.  A pelvic CT scan on

15  November 11, 2000, was described as unremarkable.  AT 174.  Most significantly, an EMG

16  nerve conduction study performed on December 1, 2000, suggested a nerve root compression in

17  Plaintiff's lumbar region on the right side.  AT 172-73.  A myelogram requested as a result of

18  this EMG found a mild central posterior disc bulge at the base of the spine, in the area where the

19  lumbar region joins the sacral region.  AT 171.

20          In spite of this myriad tests, Dr. Kobrin was unable to determine the cause of

21  Plaintiff's pain.  AT 166.  Nonetheless, Dr. Kobrin repeatedly found Plaintiff disabled for

22  worker's compensation purposes.  AT 149-50, 153-55, 161, 163, 166-68.  Dr. Kobrin believed

23

24          [2]The ALJ incorrectly refers to Plaintiff's treating physician as Dr. Korbin, not Kobrin.

25          [3]Radiculopathy is a clinical situation where the radicular nerve (nerve root) is compressed
by a displaced disc.  The problem tends to occur most frequently in the cervical and lumbar
26  spine.  See http://www.medhelp.org/HealthTopics/Radiculopathy.html.

5

1   Plaintiff's symptoms to be real and the source of her pain undiscovered.  AT 149.

2           As a result of the lack of objective evidence in the medical record to support the

3   radicular nature of the pain or the subjective complaints of severity, the ALJ refused to rely on

4   Dr. Kobrin's opinion that Plaintiff was suffering from a disabling physical impairment.  AT 17.

5   This finding was not in error.  A medical opinion must be well-supported by acceptable clinical

6   or laboratory findings.  20 C.F.R. 404.1527(d)(2).  The absence of clinical findings to support a

7   medical opinion is a legitimate basis upon which to discredit a treating physician's opinion.  See

8   Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir.

9   2004)(giving minimal weight to treating physician's opinions when clinical findings are not

10  present).  Despite his assertion that Plaintiff is disabled, Dr. Kobrin repeatedly noted that there

11  was no identifiable source for Plaintiff's pain.  AT 149, 166.

12          The ALJ gave greater weight to the medical opinion of the examining physician,

13  Dr. Kunar.  AT 17.  The ALJ's reliance on the opinion of the examining physician may serve as

14  substantial evidence supporting his rejection of Dr. Kobrin's conclusions.  Thomas v. Barnhart,

15  278 F.3d 947, 957 (9th Cir. 2002).  The ALJ noted that Dr. Kunar's findings were more

16  consistent with the medical evidence in the record.  AT 17.

17          Dr. Kunar examined Plaintiff on March 28, 2004, and found that, despite some

18  restriction in the range of motion in her lower back, Plaintiff did not suffer any clinical signs of

19  radiculopathy.  AT 114.  According to Dr. Kunar, Plaintiff was capable of lifting and carrying 50

20  pounds occasionally and 25 pounds frequently, as well as occasional bending and stooping.  Id.

21  Dr. Kunar placed no restrictions on Plaintiff's ability to perform activities with her upper

22  extremities, to sit, or to kneel and climb.  Id.

23          The ALJ's decision to discredit the opinion of Plaintiff's treating physician is

24  supported by other medical opinions in the record.  See Magallanes, 881 F.2d at 752 (finding

25  multiple contrary opinions by examining and consultative doctors to be substantial evidence

26  supporting the rejection of treating physician's opinion).  The ALJ described the findings of Dr.

6

1  Schneiderman, a spinal surgeon, who examined Plaintiff at Dr. Kobrin's request on August 3,

2  2001.  AT 17, 140-42.  In his evaluation, Dr. Schneiderman made few abnormal findings.

3  Following his review of Plaintiff's x-rays and other films, Dr. Schneiderman found no industrial

4  basis for Plaintiff's complaints of pain.  AT 142.  Dr. Schneiderman specifically noted that the

5  CT myelogram was essentially normal, and that the mild abnormality noted in the myelogram

6  was congenital and not the source of Plaintiff's lower back and right leg pain.  Id.  Dr. Becker,

7  Plaintiff's original treating physician, was also unable to find any objective basis for her

8  impairments.  AT 123-24

9          The ALJ's analysis of the opinion of Plaintiff's treating physician was proper.

10  The ALJ provided specific and legitimate reasons supported by substantial evidence in the record

11  to give less weight to Dr. Kobrin's opinion.  The court will not disturb the ALJ's findings.

12          b.  The ALJ Properly Found that Plaintiff's Depression Was Not Severe.

13          The ALJ found that Plaintiff did not suffer from the severe impairment of

14  depression.  AT 16.  The ALJ noted that a medical evaluation found Plaintiff to suffer only mild

15  mental impairments.  Id.  Furthermore, the ALJ found that the treating records contained no

16  allegation of psychological impairment, nor did any of Plaintiff's physicians treat any such

17  impairment or refer Plaintiff for specialized care.  Id.  The ALJ's findings were not in error.

18          An impairment is not severe only if it "would have no more than a minimal effect

19  on an individual's ability to work, even if the individual's age, education, or work experience

20  were specifically considered."  SSR 85-28.  The purpose of step two is to identify claimants

21  whose medical impairment is so slight that it is unlikely they would be disabled even if age,

22  education, and experience were taken into account.  Bowen v. Yuckert, 482 U.S. 137, 107 S. Ct.

23  2287 (1987).  "The step-two inquiry is a de minimis screening device to dispose of groundless

24  claims."  Smolen v. Chater 80 F.3d 1273, 1290 (9th Cir. 1996).  Impairments must be considered

25  in combination in assessing severity.  20 C.F.R. § 404.1523.

26          Plaintiff argues the ALJ failed to recognize as severe her depression.  Although

1   the burden is on Plaintiff at step two of the sequential evaluation, see Tidwell v. Apfel, 161 F.3d

2   599, 601 (9th Cir. 1998), counsel for Plaintiff has offered no meaningful argument in support of

3   the claim that the ALJ erred at step two.  The ALJ correctly noted that the first allegation of

4   depression came primarily from Plaintiff as opposed to her doctors.  AT 16.  Prior to this claim,

5   the medical evidence is absolutely devoid of any indication that Plaintiff suffered from

6   depression during the relevant time period.  Plaintiff's own "perception or description" of her

7   problems is not sufficient evidence supporting her claim.  20 C.F.R. § 416.928(a)-(b).

8           Fulfilling her obligation to thoroughly develop the record, Tonapetyan v. Halter,

9   242 F.3d 1144, 1150 (9th Cir. 2001), the ALJ accepted a psychiatric examination by Dr. Kalman

10  provided after the close of the administrative hearing.  The ALJ noted that this assessment was

11  done four years after Plaintiff's injury.  AT 16.  Dr. Kalman found Plaintiff to be mostly normal,

12  suffering only from depression, secondary to her general medical condition.  AT 189, 190.  With

13  the exception of her ability to maintain concentration for periods of time longer than two hours,

14  Dr. Kalman found Plaintiff to suffer no more than mild impairments in her ability to function.

15  AT 193-96.  Based on his evaluation, Dr. Kalman assigned a Global Assessment of Functioning

16  (GAF) score of 65.  Id.

17          The ALJ properly evaluated Dr. Kalman's findings to conclude that Plaintiff's

18  depression was not severe. The GAF is a scale reflecting the "psychological, social, and

19  occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and

20  Statistical Manual of Mental Disorders at 34 (4th ed. 2000) ("DSM IV-TR").  A GAF of 61-70

21  indicates some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in

22  social, occupational, or school function (e.g, occasional truancy, or theft within the household),

23  but generally functioning pretty well, has some meaningful interpersonal relationships.  Id.  Mild

24  mental impairments are generally not severe.  20 C.F.R. § 416.920a(d)(1).

25          The medical evidence in the record does not pass the de minimis standard of step

26  two.  Plaintiff's medical record is devoid of any history of complaints or long-term diagnosis of

8

depression by her treating physicians, nor does it contain any referrals by Plaintiff's physicians for specialized mental health care. An assessment of Plaintiff's mental state completed four years after her injury found few limitations on her ability to function in the work place. The ALJ's conclusion that Plaintiff did not suffer from the severe impairment of depression was not in error.

   c. The ALJ Properly Analyzed Plaintiff's Subjective Complaints of Pain and Other Impairments.

   The ALJ found that the objective medical evidence did not support the nature and severity of Plaintiff's subjective complaints of pain. AT 17. This finding was not in error. The ALJ properly determined that the medical record is devoid of any objective evidence to support Plaintiff's complaints of increasingly disabling pain resulting from her lower back injury.

   The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

   In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR

1   55406-01; SSR 88-13.  Work records, physician and third party testimony about nature, severity

2   and effect of symptoms, and inconsistencies between testimony and conduct also may be

3   relevant.  Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).  A failure

4   to seek treatment for an allegedly debilitating medical problem may be a valid consideration by

5   the ALJ in determining whether the alleged associated pain is not a significant nonexertional

6   impairment.  See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).   The ALJ

7   may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453,

8   1458 (9th Cir. 1989), which cannot substitute for medical diagnosis.  Marcia v. Sullivan, 900

9   F.2d 172, 177 n.6 (9th Cir. 1990).  Without affirmative evidence of malingering, "the

10  Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."

11  Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

12          Plaintiff stated in her initial application that the pain resulting from her back

13  injury was constant, precluding her from standing, sitting, bending, lifting, or walking.  AT 64.

14  In her request for reconsideration, Plaintiff elaborated on her impairment, claiming that her injury

15  made most activities painful and forced her to depend on others to clean, cook, or shop for her.

16  AT 57.  At the administrative hearing, Plaintiff testified that the sharp pain in her lower back and

17  right side prevented her from walking more than 20 minutes, AT 209, driving more than 20

18  minutes without stopping multiple times, AT 207-08, or sleeping more than an hour at a time,

19  AT 205.

20          The ALJ properly found that there was no objective evidence to support Plaintiff's

21  complaints of pain and the limitations resulting therefrom.  AT 17.  All x-rays, films, and other

22  objective tests related to Plaintiff's complaints of lower back and right leg pain consistently

23  showed little to no impairment.  AT 171-74, 179.  Subsequent medical evaluations by multiple

24  medical professionals confirmed these findings.  Dr. Becker referred Plaintiff to Dr. Kobrin

25  because, in spite of otherwise normal findings, Plaintiff's complaints of impairment lasted longer

26  than is typical for her alleged injury.  AT 124.  In three years of treatment, Dr. Korbin could find

10

1  no objective source for Plaintiff's pain.  AT 149, 166.  Dr. Schneiderman noted no abnormalities

2  in Plaintiff's back that would cause the type of pain of which she complained.  AT 142.  Dr.

3  Kunar found no clinical basis to support Plaintiff's complaints of radiculopathy.  AT 114.

4          The ALJ assessment of Plaintiff's subjective complaints applied the proper legal

5  standard.  The ALJ's finding that a lack of objective evidence supported Plaintiff's complaints of

6  disabling pain is based on substantial evidence in the record.  The ALJ's credibility

7  determination was proper and will not be disturbed.

8          The ALJ's decision is fully supported by substantial evidence in the record and

9  based on the proper legal standards.  Accordingly, IT IS HEREBY ORDERED that:

10          1.  Plaintiff's motion for summary judgment or remand is denied, and

11          2.  The Commissioner's cross-motion for summary judgment is granted.

12  DATED:  October 26, 2006.

14                              UNITED STATES MAGISTRATE JUDGE

16  13
17  Lanier.ss.wpd

11